# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 30, 2013

Nos. 11-70007

Lyle W. Cayce
Clerk

SHELTON DENORIA JONES,

Petitioner–Appellee
Cross-Appellant,

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent–Appellant
Cross-Appellee.

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-1825

Before PRADO, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Shelton Jones, convicted and sentenced to death for the capital murder of
Houston Police Sergeant Bruno Soboleski, was granted federal habeas relief on
his claim that, in violation of the principles first announced in *Penry v.
Lynaugh*,[1] Texas's former special issues did not provide an adequate vehicle for

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

[1] (*Penry I*), 492 U.S. 302 (1989).

Nos. 11-70007

the jury to give full consideration and effect to his mitigating evidence.[2] The State of Texas appeals, and Jones cross-appeals the district court's holding that his claim that the presence of uniformed officers during his trial denied him a fair trial was procedurally defaulted. Jones also seeks a certificate of appealability (COA) on two claims, capriciousness in his sentencing and ineffective assistance of counsel. We affirm the grant of habeas relief. We vacate the COA issued on Jones's fair-trial claim regarding uniformed officers' attendance at trial, dismiss his cross-appeal, and remand to the district court for further proceedings because the district court did not satisfy the threshold inquiry required before a COA may issue. We dismiss, as moot, Jones's application for a COA on his capriciousness claim and deny a COA on his ineffective assistance of counsel claim.

## I

At the punishment phase of Jones's trial, after he was found guilty of capital murder for killing Officer Soboleski, the jury found that Jones acted deliberately and that there was a probability that Jones would commit criminal acts of violence that constitute a continuing threat to society. These findings resulted in a sentence of death under then-existing Texas law. The judgment was affirmed on direct appeal by the Texas Court of Criminal Appeals (TCCA), and the United States Supreme Court denied Jones's petition for a writ of certiorari.[3]

## A

On January 27, 1997, the TCCA appointed counsel to represent Jones in pursuing an application for a writ of habeas corpus. The order mandated that

---

[2] *Jones v. Thaler*, No. H-09-1825, 2011 U.S. Dist. LEXIS 21262, at *15-16 (S.D. Tex. Mar. 3, 2011).

[3] *Jones v. State*, No. 71,369 (Tex. Crim. App. May 4, 1994) (en banc), *cert. denied*, 514 U.S. 1067 (1995).

2

Nos. 11-70007

an application for a writ of habeas corpus be filed no later than 180 days after the date of appointment. Because this date, July 26, 1997, fell on a Saturday, the deadline actually fell on the next business day, July 28, 1997.[4] Prior to the deadline, the TCCA granted leave for Jones's counsel "to file an incomplete application for writ of habeas corpus on or before April 24, 1997, with leave to file a supplemental and/or amended application before July 26, 1997." The order stated that "[a]ny incomplete application shall not be considered by the trial court or this Court until the 180 day period for filing applicant's original application, and any extension of this period granted by the trial court, has elapsed," and it also stated that "[a]ny supplemented application shall be deemed an original, not a successor, application."

Jones filed a skeletal application on April 23, 1997 and, on July 25, 1997, mailed an "Amended Application for Post-Conviction Writ of Habeas Corpus Pursuant to Article 11.071 of the Texas Code of Criminal Procedure" (Amended Application), which was received and filed on July 28, 1997. Also on July 28, 1997, Jones filed a document entitled "Errata and Corrections to Amended Application for Post-Conviction Writ of Habeas Corpus Pursuant to Article 11.071 of the Texas Code of Criminal Procedure" (Errata). The Errata consisted of a list of various omissions and errors as well as the entire text of Jones's fair-trial claim regarding uniformed officers at trial, which Jones asserts was omitted from the Amended Application due to a computer error.

On October 24, 1997, Jones filed a Motion to Supplement, which sought leave to file an attached "Supplemental Application for Post-Conviction Writ of Habeas Corpus Pursuant to Article 11.071 of the Texas Code of Criminal Procedure" (Supplemental Application) "as a corrected version of the Amended Application . . . and Errata . . . previously filed." In the motion, and on appeal,

---

[4] *See Ex parte Reynoso*, 257 S.W.3d 715, 721 (Tex. Crim. App. 2008).

3

Nos. 11-70007

Jones asserts that the Amended Application and Errata were consolidated into the Supplemental Application for simplification and to avoid confusion. The motion asserted that the Supplemental Application "contain[ed] no new claims or matters not previously raised in the [A]mended [A]pplication and [E]rrata and work[ed] no surprise to the State." On October 27, 1997, the trial court granted leave to file the Supplemental Application and ordered that the Supplemental Application "shall be deemed as an original part of the original and amended applications previously filed, and not as a successor application."

Ultimately, the TCCA denied habeas relief on the claims presented in the Amended Application based upon the trial court's findings and conclusions and the TCCA's own review.[5] The TCCA also reviewed the Supplemental Application and held that "[b]ecause [it] was filed after the deadline provided for an initial application for habeas corpus," that it was "a subsequent application."[6] The TCCA determined that the Supplemental Application did not meet any of the exceptions for submission of a subsequent application and dismissed it as an abuse of the writ.[7] The TCCA also "expressly reject[ed] all findings and conclusions related to this claim and den[ied] all motions pending that relate[d] to the claim."[8] The TCCA's order did not expressly reference the Errata, which had been filed on the last day of the deadline for filing, but after the Amended Application had been filed.

**B**

---

[5] *Ex parte Jones*, Nos. WR-62,589-01 & WR-62,589-02, 2005 Tex. Crim. App. Unpub. LEXIS 391, at *1-2 (Tex. Crim. App. Oct. 26, 2005).

[6] *Id.*

[7] *Id.* at *2.

[8] *Id.*

4

Nos. 11-70007

Subsequently, Jones filed another application for a writ of habeas corpus in state court, which raised a claim, based on *Penry I*, "that the former special issues of the Texas capital sentencing scheme did not provide an adequate vehicle for the jury to give full consideration and full effect to his mitigating evidence." In accordance with Texas law at the time of the punishment phase of Jones's trial, the jury was required to answer two special issues:

> (1) "Was the conduct of the defendant, Shelton Denoria Jones, that caused the death of the deceased committed deliberately and with the reasonable expectation that the death of the deceased or another would result?"

> (2) "Is there a probability that the defendant, Shelton Denoria Jones, would commit criminal acts of violence that constitute a continuing threat to society?"

The trial court also gave the jury a supplemental instruction:

> You are instructed that when you deliberate on the questions posed in the special issues, you are to consider all relevant mitigating circumstances, if any, supported by the evidence presented in both phases of the trial, whether presented by the State or the defendant. A mitigating circumstance may include, but is not limited to, any aspect of the defendant's character, background, record, or circumstances of the crime which you believe could make a death sentence inappropriate in this case. If you find that there are any mitigating circumstances in this case, you must decide how much weight they deserve, and thereafter, give effect and consideration to them in assessing the defendant's personal culpability, at the time you answer the special issue. If you determine, when giving effect to the mitigating evidence, if any, that a life sentence, as reflected by a negative finding to the issue under consideration, rather than a death sentence, is an appropriate response to the personal culpability of the defendant, then a negative finding should be given to one of the special issues.

In affirming Jones's conviction on direct appeal, the TCCA characterized Jones's mitigation evidence: "[Jones] produced numerous character witnesses during trial who testified that he was peaceable, hard-working, a good high school student, and non-violent while incarcerated and awaiting trial. [Jones]

5

also called a psychologist who testified [Jones's] personality could be termed as an 'empty vessel' personality."[9]  The referenced psychologist was Dr. Jerome Brown.  Brown testified that Jones has a "fairly rare" personality type that "does not fit into any known mental disorder."  He described it as an "empty vessel personality, in that a person's moral structures, this person's moral convictions, are very fluid and they basically change from one situation to the next depending on who [he is] with and who is influencing him at the time."  According to Brown, such a person "does not fit the category of violent people" with whom Brown had contact.  Instead, the individual is shaped by the strongest influence available to him. "[Y]ou don't find this individual instigating things of a criminal nature. . . . You find him following or being with a group or with at least one other person who is more anti-social, consistently anti-social and more aggressive."  Finally, Brown explained his conclusion that "the shift to the strongest authority doesn't happen on the second-to-second basis."  The shift may take a matter of days.

The TCCA denied relief on this habeas application, holding that there was no *Penry* error because the jury could give full and meaningful effect to Jones's mitigation evidence within the scope of the former special issues.[10]  The TCCA concluded "that [Jones's] mitigation evidence, while meeting the *Tennard* [*v. Dretke*[11]] standard for relevance, had 'only a tenuous connection—*some* arguable relevance—to [Jones's] moral culpability.'"[12]  The TCCA characterized the evidence that Jones "suffers from psychological irregularities or deficits,

---

[9] *Jones v. State*, No. 71,369, slip op. ¶ 19 (Tex. Crim. App. May 4, 1994) (en banc).

[10] *Ex parte Jones*, No. AP-75,896, 2009 Tex. Crim. App. Unpub. LEXIS 480, at *1, *22 (Tex. Crim. App. June 10, 2009).

[11] 542 U.S. 274 (2004).

[12] *Ex parte Jones*, 2009 Tex. Crim. App. Unpub. LEXIS 480, at *21 (quoting *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 253 n.14 (2007)) (some internal quotation marks omitted).

including what his psychologist expert witness described as 'empty vessel syndrome,'" as "a far-cry from the sort of psychological mitigation evidence that has been determined to be *Penry* evidence."[13]   The evidence indicated that Jones's empty-vessel personality made him susceptible to the influence of others, and the TCCA felt it particularly relevant that Jones shot Officer Soboleski "without provocation or urging of armed violence by his companion."[14]   The TCCA determined that the relevant mitigation evidence present in the case were the "sort of evidence that the Supreme Court has held are within the scope of the former special issues."[15]

## C

Jones filed the present federal habeas petition following the TCCA's denial of his *Penry* claim.   Following a stay of the case to allow Jones to raise an additional claim in state court—a claim that is not part of this appeal—the State filed a motion for summary judgment, and Jones filed a cross-motion for partial summary judgment.   Ruling first on Jones's *Penry* claim, the district court determined that "Jones' jury could have found that the evidence of Jones' psychological issues made Jones less morally culpable, yet more likely to be dangerous in the future," and that "the jury could have found that Jones acted deliberately while still believing him less culpable based on his psychological issues."[16]   The district court held that "[t]he [TCCA's] decision to the contrary was objectively unreasonable" and that "[t]he supplemental 'nullification'

---

[13] *Id.* at *20.

[14] *Id.* at *20-21.

[15] *Id.* at *21-22.

[16] *Jones v. Thaler*, No. H-09-1825, 2011 U.S. Dist. LEXIS 21262, at *14-15 (S.D. Tex. Mar. 3, 2011).

instruction was plainly inadequate," thus "Jones [was] entitled to a new sentencing hearing."[17]

In addressing whether Jones's fair-trial claim was procedurally defaulted, the district court recounted Jones's state habeas proceedings and relied on the "plain wording" of the Texas Code of Criminal Procedure.[18]  The district court believed that it was "clear from the TCCA's order dismissing Jones' applications that the TCCA regarded the skeletal and amended applications as the original application permitted by the statute and order, and the [Errata] as a successive petition seeking to add a new claim after the filing of the original application."[19]  The district court stated that this was "consistent with a reading of the statute" and that it was "in no position to second guess the TCCA on its application of Texas law."[20]  Despite holding that Jones's fair-trial claim was procedurally defaulted, "[b]ecause . . . reasonable jurists could disagree as to whether Jones complied with the terms of the April 9, 1997, TCCA order," the district court issued a COA on the claim.[21]  The State appealed the district court's grant of habeas relief on Jones's *Penry* claim, and Jones cross-appealed on the issue of whether his fair-trial claim was procedurally defaulted.  Jones has also applied to this court for issuance of a COA on two additional claims.

## II

We first consider the State's appeal of the district court's decision to grant federal habeas relief to Jones on his *Penry* claim.  On a federal habeas appeal, we review findings of fact for clear error and issues of law and mixed issues of

---

[17] *Id.* at *15-16.

[18] *Id.* at *17-22.

[19] *Id.* at *21.

[20] *Id.* at *22.

[21] *Id.* at *22-23.

law and fact de novo.[22]  This habeas proceeding is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) because Jones filed his federal habeas petition after AEDPA's effective date of April 24, 1996.  Under AEDPA, the availability of federal habeas relief is limited for claims previously "adjudicated on the merits in State court proceedings."[23]  AEDPA prohibits a federal court from granting habeas relief to a state prisoner on a claim adjudicated on the merits in a state court proceeding unless the petitioner shows that the state court decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[24]

> With respect to the first standard, the Supreme Court has explained:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.[25]

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."[26]  "[A]n *unreasonable* application of federal law is

---

[22] *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009); *Guy v. Cockrell*, 343 F.3d 348, 351 (5th Cir. 2003).

[23] 28 U.S.C. § 2254(d).

[24] *Id.*; *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

[25] *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

[26] *Id.* at 409.

different from an *incorrect* application of federal law."[27]  Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."[28]  For purposes of both the "contrary to" and "unreasonable application" inquiries, "[s]tate-court decisions are measured against [the Supreme Court's] precedents as of 'the time the state court renders its decision.'"[29]

As of June 10, 2009, the date of the TCCA's decision, the Supreme Court had clearly established that, "[i]n order to ensure 'reliability in the determination that death is the appropriate punishment in a specific case,' the jury must be able to consider and give effect to any mitigating evidence relevant to a defendant's background and character or the circumstances of the crime."[30]  Whether mitigating evidence is relevant is governed by the "low threshold" of the general evidentiary standard.[31]  Thus, to be relevant, mitigating evidence merely needs to have a tendency to make the existence of a fact or circumstance that a fact-finder could reasonably deem to have mitigating value more probable or less probable than it would be without the evidence.[32]

---

[27] *Id.* at 410.

[28] *Id.* at 411.

[29] *Pinholster*, 131 S. Ct. at 1399 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)).

[30] *Penry I*, 492 U.S. 302, 328 (1989) (citation omitted) (quoting *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976)).

[31] *Tennard v. Dretke*, 542 U.S. 274, 284-85 (2004).

[32] *See id.* at 284.

Nos. 11-70007

The Supreme Court has issued a line of post-*Penry I* cases explaining this principle. In 2007, in *Abdul-Kabir v. Quarterman*[33] and *Brewer v. Quarterman*,[34] the Court expressed its view of the then-current state of Supreme Court jurisprudence. In *Abdul-Kabir*, the Court stated that, well before *Penry I*, the Court's cases "had firmly established that sentencing juries must be able to give meaningful consideration and effect to all mitigating evidence that might provide a basis for refusing to impose the death penalty on a particular individual, notwithstanding the severity of his crime or his potential to commit similar offenses in the future."[35] Declaring that Justice O'CONNOR's opinion for the Court in *Penry I* had "endorsed" the views she expressed in her separate opinion in *Franklin v. Lynaugh*,[36] the Court approvingly quoted Justice O'CONNOR's language from *Franklin* concerning Texas's special verdict questions:

> To the extent that the mitigating evidence . . . was relevant to one of the special verdict questions, the jury was free to give effect to that evidence by returning a negative answer to that question. If, however, petitioner had introduced mitigating evidence about his background or character or the circumstances of the crime that was not relevant to the special verdict questions, *or that had relevance to the defendant's moral culpability beyond the scope of the special verdict questions*, the jury instructions would have provided the jury with no vehicle for expressing its "reasoned moral response" to that evidence.[37]

---

[33] 550 U.S. 233 (2007).

[34] 550 U.S. 286 (2007).

[35] *Abdul-Kabir*, 550 U.S. at 246.

[36] 487 U.S. 164 (1988).

[37] *Franklin*, 487 U.S. at 185 (O'CONNOR, J., concurring in the judgment) (emphasis added), *cited with approval in Abdul-Kabir*, 550 U.S. at 252-53.

In endorsing this language, the Court stated that it was not adopting a rule that "a defendant is entitled to special instructions whenever he can offer mitigating evidence that has *some* arguable relevance beyond the special issues."[38]  Instead, the Court stated:

> The rule that we reaffirm today—a rule that has been clearly established since our decision in *Penry I*—is this: Special instructions are necessary when the jury could not otherwise give *meaningful effect* to a defendant's mitigating evidence.  The rule is narrower than the standard urged by [the petitioner in *Graham v. Collins*[39]] because special instruction is not required when mitigating evidence has only a tenuous connection—"*some* arguable relevance"—to the defendant's moral culpability.  But special instruction is necessary when the defendant's evidence *may have meaningful relevance* to the defendant's moral culpability "*beyond the scope of the special issues*."[40]

The Court discussed *Penry I* and explained that it had held that a special issue is insufficient to account for mitigating evidence if that evidence functions as a "two-edged sword" because it is relevant to the special issue only as an aggravating factor but, at the same time, may diminish the defendant's blameworthiness for the crime.[41]  The Court then went further in stating:

> [W]e did not limit our holding in *Penry I* to mitigating evidence that can only be viewed as aggravating.  When the evidence proffered is doubled edged, or is *as likely to be viewed as aggravating as it is as mitigating*, the statute most obviously fails to provide for adequate consideration of such evidence.[42]

---

[38] *Abdul-Kabir*, 550 U.S. at 253 n.14 (internal quotation marks omitted).

[39] 506 U.S. 461 (1993).

[40] *Abdul-Kabir*, 550 U.S. at 253 n.14 (emphasis in last sentence added).

[41] *Id.* at 254-55.

[42] *Id.* at 255 (emphasis added).

Furthermore, the Court stated: "It is also clear that *Penry I* applies in cases involving evidence that is neither double edged nor purely aggravating, because in some cases a defendant's evidence may have mitigating effect beyond its ability to negate the special issues."[43] In *Brewer*, the Court emphasized that the mitigating evidence must be given "full effect," not just "sufficient effect."[44]

We conclude that the district court did not err in granting federal habeas relief on Jones's *Penry* claim because, in denying the claim, the TCCA unreasonably applied clearly established federal law as determined by the Supreme Court. Jones's empty-vessel evidence was relevant to his moral culpability based on the *Tennard* relevancy standard.[45] Evidence of this sort has mitigating value because "it might serve as a basis for a sentence less than death";[46] a fact-finder could reasonably determine that because of Jones's empty-vessel personality, he was "less culpable than defendants who have no such excuse."[47]

The TCCA, however, was "unconvinced that [Jones's] proffered mitigating evidence was outside the scope of the special issues"; the TCCA questioned whether Jones could be influenced by others in accordance with the empty-vessel evidence since he had acted "without provocation or urging of armed violence by his companion" and concluded that Jones's evidence, "while meeting the *Tennard* standard for relevance, had 'only a tenuous connection—*some* arguable

---

[43] *Id.* at 255 n.16.

[44] *Brewer v. Quarterman*, 550 U.S. 286, 295-96 (2007).

[45] *See Tennard v. Dretke*, 542 U.S. 274, 284-85 (2004).

[46] *Id.* at 287 (internal quotation marks omitted).

[47] *Franklin v. Lynaugh*, 487 U.S. 164, 184 (1988) (O'CONNOR, J., concurring in the judgment) (quoting *California v. Brown*, 479 U.S. 538, 545 (1987) (O'CONNOR, J., concurring)), *cited with approval in Abdul-Kabir*, 550 U.S. at 251-53.

relevance—to [his] moral culpability.'"[48] Similarly, the State argues on appeal that, because there was no evidence that Jones acted at the direction of another when he murdered Officer Soboleski, the empty-vessel evidence is irrelevant to Jones's moral culpability.  Brown's testimony did indicate that a person with an empty-vessel personality has moral convictions that "are very fluid and . . . change from one situation to the next depending on who he's with and who is influencing him at the time," but Brown did not indicate that the influence is as time-sensitive as the State argues.  Specifically, Brown indicated that a change in who is influencing a person with an empty-vessel personality "doesn't happen on the second-to-second basis."  Although Jones may not have been under direct influence at the time of the murder, a reasonable fact-finder could view the evidence as supporting a claim that, in the days leading up to his crime, Jones was subject to the influence of a "group or . . . at least one other person who [was] more anti-social . . . and more aggressive" than Jones himself.  A person with an empty-vessel personality may be influenced by those with whom he associates in the days leading up to his crime; another person need not be directing him at the particular moment he commits the crime.  Jones's empty-vessel evidence has mitigating relevance beyond the scope of the special issues.  The Supreme Court has emphasized the importance of the mitigating relevance of evidence beyond its ability to negate the two special issues that were presented to and answered by the Texas jury.[49]  As previously discussed, a fact-finder could reasonably determine that Jones's act was attributable to his empty-vessel personality and, thus, he was "less culpable than defendants who

---

[48] *Ex parte Jones*, No. AP-75,896, 2009 Tex. Crim. App. Unpub. LEXIS 480, at \*20-21 (Tex. Crim. App. June 10, 2009) (some internal quotation marks omitted).

[49] *See Abdul-Kabir*, 550 U.S. at 252-53, 253 n.14, 255 n.16.

have no such excuse,"[50] regardless of whether he acted deliberately or whether he poses a continuing threat to society.

Furthermore, while the Supreme Court has "never denied that gravity has a place in the relevance analysis," it made clear that this is true "insofar as evidence of a trivial feature of the defendant's character or the circumstances of the crime is unlikely to have *any tendency* to mitigate the defendant's culpability."[51] As an example, the Court cited evidence concerning how often the defendant will take a shower.[52] However, the Court has admonished panels of federal appellate court judges not to act as filters with regard to what is sufficiently severe; "the question is simply whether the evidence is of such a character that it 'might serve as a basis for a sentence less than death.'"[53] Jones's empty-vessel evidence meets this test because it "may have meaningful relevance to [Jones's] moral culpability 'beyond the scope of the special issues.'"[54] Thus, a special instruction was necessary.[55] The TCCA's decision to the contrary was an unreasonable application of clearly established federal law as determined by the Supreme Court. The State's argument that any *Penry* error was harmless is foreclosed by our prior decision in *Nelson v. Quarterman*.[56]

**III**

---

[50] *Franklin*, 487 U.S. at 184 (O'CONNOR, J., concurring in the judgment) (quoting *Brown*, 479 U.S. at 545 (O'CONNOR, J., concurring)), *cited with approval in Abdul-Kabir*, 550 U.S. at 251-53.

[51] *Tennard*, 542 U.S. at 286 (emphasis added).

[52] *Id.*

[53] *Id.* at 287 (quoting *Skipper v. South Carolina*, 476 U.S. 1, 5 (1986)) (some internal quotation marks omitted).

[54] *Abdul-Kabir*, 550 U.S. at 253 n.14.

[55] *Id.*

[56] 472 F.3d 287, 314 (5th Cir. 2006) (en banc).

Nos. 11-70007

Jones has cross-appealed the district court's holding that his claim that he was denied a fair trial due to the presence of uniformed police officers as spectators was procedurally defaulted. We first address the State's motion to vacate the COA and dismiss the cross-appeal. After holding that Jones's fair-trial claim was procedurally defaulted, the district court issued a COA "only as to [its] finding that Jones' fair trial claim . . . [was] procedurally defaulted."[57] The State argues that the COA is invalid because the district court only determined that the procedural issue is debatable without, as required, also determining that the constitutional claim is debatable. Jones argues that the district court did determine that the constitutional claim is debatable. He notes that the district court recited the appropriate standard of review, and he relies on one line in the district court's opinion: "The court has carefully considered each of Jones' claims and concludes that each of the claims, with the exception of Jones' Penry and fair trial claims, is foreclosed by clear, binding precedent, and Jones thus fails to make a 'substantial showing of the denial of a constitutional right.'"[58]

Considering the district court's opinion as a whole, we conclude that the district court did not make the required determination "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right."[59] AEDPA requires the issuance of a COA before an appeal may be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process

---

[57] *Jones v. Thaler*, No. H-09-1825, 2011 U.S. Dist. LEXIS 21262, at *53 (S.D. Tex. Mar. 3, 2011).

[58] *Id.* at *52.

[59] *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

issued by a state court,[60] and "[a] [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[61] Additionally, "[t]he [COA] . . . shall indicate which specific issue or issues satisfy the showing required."[62]

> [W]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue (and an appeal of the district court's order may be taken) if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. . . .

> Determining whether a COA should issue where the petition was dismissed on procedural grounds has *two components*, one directed at the underlying constitutional claims and one directed at the district court's procedural holding.  Section 2253 mandates that both showings be made before the court of appeals may entertain the appeal.  Each component of the § 2253(c) showing is part of a threshold inquiry.[63]

The section of the district court's opinion dedicated to Jones's fair-trial claim is focused on the procedural-default issue; the district court did not discuss the merits of Jones's underlying fair-trial claim.[64]  The district did observe that "[i]n light of the evidence of Jones' guilt, including the testimony of an eyewitness who had an opportunity to see Jones at close range, Jones does not

---

[60] 28 U.S.C. § 2253(c)(1).

[61] *Id.* § 2253(c)(2).

[62] *Id.* § 2253(c)(3).

[63] *Slack*, 529 U.S. at 478, 484-85 (emphasis added).

[64] *Jones v. Thaler*, No. H-09-1825, 2011 U.S. Dist. LEXIS 21262, at *17-23 (S.D. Tex. Mar. 3, 2011).

meet this standard."[65]  The "standard" to which the district court referred was an "actual innocence" standard, which the district court said was tantamount to "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."[66]  However, this discussion pertained to the district court's conclusion that a court may not address an issue that is procedurally defaulted absent a showing of cause and prejudice.[67]  It was not a discussion of the merits of the claim regarding uniformed police officers' attendance at trial.

At the conclusion of the discussion of Jones's fair-trial claim, the district court said it was issuing a COA "[b]ecause . . . reasonable jurists could disagree as to whether Jones complied with the terms of the April 9, 1997, TCCA order,"[68] not because reasonable jurists could disagree as to that procedural issue *and* because reasonable jurists could find it debatable whether the petition states a valid claim of the denial of a constitutional right.  Jones is correct that the district court recited the correct standard of review from *Slack* in the COA section of its opinion,[69] and the COA section did include the following paragraph:

> The court has carefully considered each of Jones' claims and concludes that each of the claims, with the exception of Jones' Penry and fair trial claims, is foreclosed by clear, binding precedent, and Jones thus fails to make a "substantial showing of the denial of a constitutional right."  The court grants relief on the merits of the Penry claim and concludes that reasonable jurists could disagree whether Jones' fair trial claim is procedurally defaulted.  The court

---

[65] *Id.* at *23.

[66] *Id.*

[67] *Id.* at *22-23.

[68] *Id.* at *23.

[69] *Id.* at *51-52.

Nos. 11-70007

therefore concludes that Jones is entitled to a certificate of appealability only on his fair trial claim.[70]

This section, however, like the section dedicated to the fair-trial claim, lacks any meaningful discussion of the merits of Jones's underlying fair-trial claim.[71] Recitation of the correct standard of review, and a single sentence that does not affirmatively hold that "jurists of reason would find it debatable whether the [fair-trial claim in Jones's] petition states a valid claim of the denial of a constitutional right," is insufficient in light of the opinion as a whole, which lacks any meaningful discussion of the merits of Jones's fair-trial claim.

Because we conclude that the district court did not make the determination required by *Slack* for the issuance of a COA on Jones's fair-trial claim, we vacate the COA, dismiss Jones's cross-appeal, and remand to the district court for a determination, in the first instance, of whether jurists of reason would find it debatable whether the fair-trial claim raised in Jones's federal habeas petition states a valid claim of the denial of a constitutional right. We recognize that the Supreme Court has held that the only jurisdictional component of AEDPA's COA requirements is the one requiring the issuance of a COA before an appeal may be taken to the court of appeals,[72] "[b]ut calling a rule nonjurisdictional does not mean that it is not mandatory or that a timely objection can be ignored."[73] The State timely raised the issue of the COA's validity, and we, therefore, address it.[74] Though we are not foreclosed from ruling on the question of whether Jones's claim was procedurally defaulted,

---

[70] *Id.* at \*52-53 (citation omitted).

[71] *Id.* at \*50-53.

[72] *Gonzalez v. Thaler*, 132 S. Ct. 641, 649-50 (2012).

[73] *Id.* at 651.

[74] *See id.*

we conclude that remand is appropriate, first, because Jones has not briefed the merits of the fair-trial claim on appeal, and second, because we are unable to benefit from the district court's analysis due to the lack of any discussion of the merits of the fair-trial claim in the district court's opinion.[75] *Slack* made clear that there are "two components" to the "threshold inquiry" mandated by 28 U.S.C. § 2253.[76] By remanding to the district court, we seek to ensure that this "threshold inquiry" is complete.

## IV

Apart from his appeal, Jones filed an application for a COA, which requests that we issue a COA on two claims. His request for a COA on his claim that the supplemental instruction given to the jury at the punishment phase of his trial "injected capriciousness into the proceeding" in violation of the Eighth and Fourteenth Amendments to the United States Constitution is dismissed as moot. Because we affirm the district court's grant of federal habeas relief on Jones's *Penry* claim—which overturned Jones's death sentence—he has already been granted the relief requested on his capriciousness claim.

With respect to Jones's second claim—that he was denied the effective assistance of counsel because his counsel failed to conduct a reasonable investigation regarding the search of Brenda Pickrom's apartment, a search that led to his arrest and the discovery of evidence used against him—AEDPA mandates that a COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[77] The applicant must show "that reasonable jurists could debate whether (or, for that matter, agree

---

[75] *Cf. Muniz v. Johnson*, 114 F.3d 43, 45 (5th Cir. 1997) (explaining how this court benefits from the district court's ruling on a COA application).

[76] *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

[77] 28 U.S.C. § 2253(c)(2).

that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"[78] "Where a district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[79]

> The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits. [Appellate courts] look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason. This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it.[80]

In a death-penalty case, any doubts as to whether a COA should issue must be resolved in the applicant's favor.[81]

The TCCA concluded that Jones was not entitled to habeas relief on his ineffective assistance of counsel claim because he could not demonstrate prejudice as required by *Strickland v. Washington*;[82] this was based on the TCCA's conclusion that Jones could not claim the protection of the Fourth Amendment because he had no reasonable expectation of privacy in Pickrom's apartment. Jones was also denied federal habeas relief on this claim because the district court concluded that "it [was] clear that the investigation Jones claims counsel failed to perform would not have changed the result of the

---

[78] *Slack*, 529 U.S. at 484 (some internal quotation marks omitted).

[79] *Id.*

[80] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

[81] *Martinez v. Dretke*, 404 F.3d 878, 884 (5th Cir. 2005).

[82] 466 U.S. 668, 687 (1984).

suppression motion."[83]  In support of its holding, the district court determined that "[t]he state court's conclusion that Jones had no reasonable expectation of privacy [was] entitled to deference."[84] The district court noted that Pickrom—the apartment's lessee—had, on multiple occasions, stated that Jones did not have permission to be in the apartment, although she later contradicted these statements in an affidavit in support of Jones's state habeas petition.[85] According to the district court, the TCCA's conclusion that Pickrom's initial statements "were credible, and that her post hoc attempt to explain these statements away was not credible," was "not unreasonable."[86]

We deny Jones's application for a COA on his ineffective assistance of counsel claim because the district court's resolution of this claim is not debatable amongst jurists of reason.  First, jurists of reason would agree that the TCCA's credibility findings regarding Pickrom's contradictory statements were not unreasonable and that, consequently, the TCCA's decision was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[87]  Pickrom gave a statement to police on the date of the search, testified before the grand jury, testified during the suppression hearing, testified during the guilt–innocence phase of Jones's trial, and gave an affidavit in support of Jones's state habeas petition.  As discussed by the district court, on several occasions, including when under oath and subject to cross-examination, Pickrom stated that Jones did not have her consent to be in the apartment or

---

[83] *Jones v. Thaler*, No. H-09-1825, 2011 U.S. Dist. LEXIS 21262, at *34 (S.D. Tex. Mar. 3, 2011).

[84] *Id.* at *33.

[85] *Id.* at *32-33.

[86] *Id.* at *33.

[87] *See* 28 U.S.C. § 2254(d)(2).

that Jones had no business being there.  Although Pickrom later explained in her affidavit in support of Jones's state habeas petition that she misunderstood the question, it was not unreasonable for the TCCA to conclude that her earlier statements were credible while her post hoc attempted explanation was not.

Second, in light of the TCCA's credibility findings, jurists of reason would agree that the TCCA's conclusion that Jones's ineffective assistance of counsel claim must fail because he could not demonstrate prejudice—because he could not assert the protection of the Fourth Amendment due to not having a reasonable expectation of privacy—was not "contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[88]  The Supreme Court cases of most relevance are *Minnesota v. Carter*[89] and *Minnesota v. Olson*,[90] which concern the right of a houseguest to claim the protection of the Fourth Amendment.  In *Olson*, the Court held that "society recognizes that a houseguest has a legitimate expectation of privacy in his host's home," which entitles the houseguest to claim the protection of the Fourth Amendment.[91]  The Court described a houseguest as one who "is there with the permission of his host."[92]  In *Carter*, the Court clarified that "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present *with the consent of the householder* may not."[93]

---

[88] *See id.* § 2254(d)(1).

[89] 525 U.S. 83 (1998).

[90] 495 U.S. 91 (1990).

[91] *Id.* at 98, 100.

[92] *Id.* at 99.

[93] *Carter*, 525 U.S. at 90 (emphasis added).

23

Nos. 11-70007

The TCCA concluded that Jones did not have Pickrom's consent to be in the apartment, and *Carter* and *Olson* make clear that a person present in another's home without consent may not claim the protection of the Fourth Amendment.  Because Jones is not entitled to claim the protection of the Fourth Amendment, he cannot demonstrate prejudice from his counsel's alleged failure to investigate.  Because he cannot demonstrate prejudice, jurists of reason would agree with the district court's determination that the TCCA's conclusion that Jones's ineffective assistance of counsel claim must fail—because he had no reasonable expectation of privacy in Pickrom's apartment—was not "contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[94]

We need not reach the question of whether the district court's resolution of the question of inevitable discovery is debatable amongst jurists of reason because Jones was not entitled to claim the protection of the Fourth Amendment. Additionally, Jones's claim, based on *Panetti v. Quarterman*,[95] that the district court should have considered his ineffective assistance of counsel claim de novo is not supported by *Panetti* and is without merit.[96]

*     *     *

For the foregoing reasons, the district court's grant of federal habeas relief is AFFIRMED.  The COA on Jones's fair-trial claim is VACATED, his cross-appeal is DISMISSED, and we REMAND to the district court for further proceedings.  Jones's application for a COA on his capriciousness claim is

---

[94] *See* 28 U.S.C. § 2254(d)(1).

[95] 551 U.S. 930 (2007).

[96] *See Panetti*, 551 U.S. at 948, 952-53 (holding that review of the petitioner's underlying claim was "unencumbered by the deference AEDPA normally requires" because there was an error in the state court's process, not simply because there was *some* unreasonable application of federal law).

Nos. 11-70007

DISMISSED AS MOOT, and his application for a COA on his ineffective assistance of counsel claim is DENIED.