**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-6364

DANNY EUGENE THOMPSON,

Petitioner – Appellant,

v.

DOUGLAS F. GANSLER, Attorney General for the state of Maryland,

Respondent – Appellee,

and

PATRICIA GOINS-JOHNSON, Warden, Patuxent Institution Correctional Mental
Health Center - Jessup,

Respondent.

Appeal from the United States District Court for the District of Maryland, at Baltimore.
William M. Nickerson, Senior District Judge.  (1:14-cv-01268-WMN)

Argued:  March 20, 2018                    Decided:  May 21, 2018

Before WYNN, FLOYD, HARRIS, Circuit Judges.

Affirmed by unpublished opinion.  Judge Wynn wrote the opinion, in which Judge Floyd
and Judge Harris concurred.

**ARGUED:**  Stephen Bennett Mercer, RAQUINMERCER, LLC, Rockville, Maryland,
for Appellant.  Edward John Kelley, OFFICE OF THE ATTORNEY GENERAL OF

MARYLAND, Baltimore, Maryland, for Appellee. **ON BRIEF:** David W. Lease, SMITH, LEASE & GOLDSTEIN, LLC, Rockville, Maryland, for Appellant. Brian E. Frosh, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

In 2008, Petitioner Danny Eugene Thompson ("Petitioner") stood trial in the Circuit Court for Baltimore County, Maryland, for, among other things, murder and armed robbery. At the end of his trial, the jury returned legally inconsistent verdicts, in violation of Maryland law. However, Petitioner's trial counsel did not object to the verdicts. In state post-conviction proceedings, Petitioner alleged that his trial counsel's failure to object constituted ineffective assistance under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The state court concluded that although Petitioner's trial counsel performed deficiently by failing to object to the jury's inconsistent verdicts, his counsel's deficient performance did not result in any prejudice.

Petitioner then sought relief in federal district court under 28 U.S.C. § 2254. The district court denied Petitioner relief, but nonetheless granted him a certificate of appealability. Because we agree with the state court's conclusion that trial counsel's deficient performance did not result in any prejudice, we affirm the denial of Petitioner's request for relief.

I.

The evidence at Petitioner's trial revealed the following. On the morning of May 10, 2008, Carlos Santay—a Guatemalan native who worked the night shift as a motel housekeeper—returned home from work and found his pregnant girlfriend in labor. However, Santay's girlfriend was not yet ready to leave for the hospital. Thus, in preparation for their eventual hospital trip, Santay left home and drove to a nearby gas

3

station to purchase enough fuel to transport his girlfriend to the hospital. At the gas station, then-seventeen-year-old Petitioner approached Santay and offered to sell him a music CD. Santay declined the offer.

Santay then walked to the cashier's booth and took out his wallet to pre-pay for gas. Petitioner, standing nearby, noticed several twenty-dollar bills inside Santay's wallet and attempted to steal the wallet. Santay resisted, and a struggle ensued. During the struggle, Petitioner pulled out a knife and stabbed Santay to death. Petitioner then fled the scene, taking off with a small piece of Santay's wallet and no cash.

The police arrested Petitioner a few days later. While in custody, Petitioner confessed to killing Santay, but stated that he never intended to stab him. According to Petitioner, he intended only to "snatch" Santay's wallet and run. Petitioner claimed that he pulled out the knife only after Santay resisted his efforts.

On March 18, 2009, Petitioner stood trial in the Circuit Court for Baltimore County, Maryland, on, *inter alia*, the following counts: (1) attempted robbery with a dangerous weapon ("attempted armed robbery"); (2) robbery with a dangerous weapon ("armed robbery"); (3) first-degree felony murder; and (4) first-degree premeditated murder.[1] At trial, Petitioner—through counsel—conceded that he killed Santay.[2] But Petitioner argued that Santay was the unfortunate victim of a "snatching" gone awry, not

---

[1] Petitioner also was charged with second-degree murder, second-degree depraved heart murder, and involuntary manslaughter. However, the jury did not return verdicts on these counts.

[2] Petitioner did not testify at trial.

armed robbery, because Petitioner lacked the intent to rob or kill Santay. Thus, Petitioner contended that his actions warranted a conviction for manslaughter or second-degree murder—not first-degree premeditated murder or felony murder.

In rebuttal, the State argued that, regardless of Petitioner's original intent, the attempted "snatching" morphed into armed robbery once Santay resisted and Petitioner overcame his resistance. Therefore, in the State's view, Petitioner's actions warranted, at the very least, convictions for both armed robbery and first-degree felony murder.

The trial court instructed the jury as follows regarding armed robbery, attempted armed robbery, and first-degree felony murder:

> In order to convict the Defendant of attempted robbery with a dangerous weapon, the State must prove all of the elements of robbery and must also prove that the Defendant committed the robbery by using a dangerous weapon.
>
> ***
>
> Robbery is the taking and carrying away of the property from someone else by force or threat of force with the intent to deprive the victim of the property. In order to convict the Defendant of robbery, the State must prove theft, that is, that the Defendant took the property by force or threat of force, and that the Defendant intended to deprive the victim of the property.
>
> ***
>
> If there is any injury to the person of the owner in the taking of the property or if he resists the attempt to rob him and his resistance is overcome, there is sufficient violence to make the taking robbery however slight the resistance. In other words, sufficient force must be used to overcome resistance and the mere force that is required to take possession when there is no resistance is not enough.
>
> ***
>
> Attempt. Attempt is a substantial step beyond mere preparation toward the commission of a crime. In order to convict the Defendant of attempted robbery with a dangerous weapon, the State must prove that the Defendant took a substantial step beyond mere preparation toward the commission of the crime of robbery with a dangerous weapon and that the Defendant intended to commit the crime of robbery with a dangerous weapon.

5

***

In order to convict the Defendant of robbery with a dangerous weapon the State must prove all of the elements of robbery and must also prove that the Defendant committed the robbery by using a dangerous weapon.

***

In order to convict the Defendant of first degree felony murder the State must prove that the Defendant attempted to commit the felony of robbery with a dangerous weapon, that the Defendant killed the victim and that the act resulting in the death of the victim occurred during the attempted commission of the felony, that is, robbery with a dangerous weapon.

Transcript of Proceedings, ECF No. 39-1, at 70:15–73:1 (formatting altered). During deliberations, the jury sent a message to the trial court requesting clarification on the word "attempted." *Id.* at 131:23–32:4. Around this same time, the parties also discovered a typographical error in the instruction regarding felony murder. *Id.* at 134:1–10. Specifically, the instruction omitted the phrases "committed or attempted to commit" and "the commission or attempted commission." *See id.* Accordingly, the trial court provided the jury with corrected written instructions and orally instructed the jury as follows with respect to felony murder:

[Y]ou will see that in order to find the Defendant guilty of first degree felony murder, you would have to find that he *committed or attempted to commit* the felony of robbery, that he did, in fact, kill the victim, and that the act resulting in the death of the victim occurred during *the commission or attempted commission* of a felony.

Transcript of Proceedings, ECF No. 39-2, at 4:2–9 (emphases added).

On March 23, 2009, the jury convicted Petitioner of armed robbery and felony murder, and acquitted him of attempted armed robbery and first-degree premeditated murder. Petitioner's counsel did not object to the verdicts. Petitioner's counsel then filed a motion for a new trial on grounds unrelated to this appeal. The trial court denied the

6

motion. Petitioner thereafter was sentenced to life imprisonment, with all but fifty years suspended.

Petitioner appealed his conviction to the Maryland Court of Special Appeals. There, he raised several issues, but did not assert that the jury verdicts rendered in his case—not guilty of attempted armed robbery, but guilty of armed robbery and felony murder—were legally inconsistent. The Court of Special Appeals affirmed his conviction. Petitioner subsequently filed a Petition for Writ of Certiorari to the Court of Appeals of Maryland. The Court of Appeals denied his petition.

Petitioner then sought relief in the same court where his trial was conducted, the Circuit Court for Baltimore County. Accordingly, in this new posture the Circuit Court served as the state post-conviction review court ("state PCR court"). There, Petitioner alleged, *inter alia*, that his trial counsel rendered constitutionally ineffective assistance by failing to object to the fact that the jury rendered legally inconsistent verdicts, in violation of Maryland law. According to Petitioner, his trial counsel's failure to object to the inconsistent jury verdicts constituted ineffective assistance of counsel, depriving Petitioner of his Sixth Amendment right to effective counsel under the United States Constitution.

The state PCR court held a hearing on November 28, 2012. During this hearing, Petitioner's trial counsel testified that, at the time of Petitioner's trial, she was unaware of the Court of Appeals of Maryland's decision issued nine months prior in *Price v. State*, 949 A.2d 619, 627–30 (Md. 2008). In that case, the Court of Appeals abrogated long-standing Maryland common law by holding that, upon objection by a defendant, legally

7

inconsistent jury verdicts in criminal cases "shall no longer be allowed." *Id.* at 630. Petitioner's trial counsel testified that she would have objected to the verdicts returned at Petitioner's trial had she been aware of *Price v. State*. Petitioner, who also was present at the hearing, testified that trial counsel never discussed the issue of inconsistent verdicts with him. Petitioner testified further that he would have challenged the inconsistency of his verdicts had he known the verdicts violated Maryland law.

The state PCR court analyzed Petitioner's ineffective-assistance claim under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and concluded that "trial counsel's failure to object to Petitioner's legally inconsistent verdicts, on account of her admitted ignorance of the law, constituted a deficient performance." J.A. at 181. Nevertheless, the state PCR court denied relief to Petitioner, as it found that Petitioner had not been prejudiced by his counsel's deficient performance. Specifically, the state PCR court was convinced "beyond a reasonable doubt that, had an objection been made, the jury would have simply been instructed on the range of permissible verdicts, and would then have returned a guilty verdict on attempt in addition to the guilty verdicts for armed robbery and felony murder." *Id.* at 183–84.

Petitioner then petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the U.S. District Court for the District of Maryland. In his petition, Petitioner argued that the state PCR court unreasonably applied *Strickland*, "engaged in impermissibl[e] speculation," and "usurped the role of the jury" when it concluded that Petitioner suffered no prejudice as a result of his trial counsel's deficient performance. *Id.* at 168.

8

The State responded that the decision whether to object to legally inconsistent verdicts is a matter of trial strategy, because the result of a timely objection—further jury deliberation—necessarily places the defendant at risk of being convicted of an additional count. Thus, in the State's view, the state PCR court erred when it found that trial counsel performed deficiently. Nevertheless, the State agreed with the state PCR court's conclusion that Petitioner did not suffer prejudice from his trial counsel's performance.

The district court denied Petitioner's petition. In so doing, the district court rejected the state PCR court's conclusion that Petitioner's trial counsel had performed deficiently by failing to object to the jury verdicts. Instead, the district court concluded that Petitioner failed to establish his trial counsel's deficient performance because, "[i]n light of the jury's finding that [Petitioner] was guilty of committing robbery, not attempting one, it was clear that the jury had rejected the defense's argument that the State's evidence did not support all the elements of robbery." *Id.* at 256. Thus, in the district court's view, "[t]rial counsel's failure to object to the inconsistent verdicts . . . was neither constitutionally deficient nor did it result in prejudice to [Petitioner]." *Id.*

In addition, the district court initially denied Petitioner a certificate of appealability, reasoning that Petitioner had failed to make "a substantial showing of the denial of a constitutional right." *Id.* at 257 (quoting 28 U.S.C. § 2253(c)(2)). However, Petitioner subsequently filed a motion to alter or amend the district court's judgment, arguing, *inter alia*, that the district court should issue a certificate of appealability because "reasonable jurists could disagree with the decision made." *Id.* at 262. The

district court thereafter agreed and thus granted Petitioner's request for a certificate of appealability, which Petitioner used to note this timely appeal. *Id.* at 264.

On appeal, Petitioner contends that the district court erred in denying his Section 2254 petition because the state PCR court unreasonably applied *Strickland*. His argument proceeds as follows: the jury verdicts returned at trial—guilty of armed robbery and felony murder yet not guilty of attempted armed robbery—are legally inconsistent and therefore objectionable under Maryland law; his trial counsel performed deficiently by failing to object, resulting in *Strickland* prejudice; the state PCR court correctly determined that his counsel's performance was deficient but unreasonably concluded that Petitioner suffered no prejudice as a result; and, finally, the district court erred in concluding that there was neither deficient performance nor prejudice.

The State disagrees. In its view, the district court properly denied Petitioner's petition because the state PCR court's denial of Petitioner's ineffective assistance claim was not unreasonable under *Strickland*.

II.

We review de novo a district court's denial of relief under Section 2254. *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012). In so doing, we apply the same standard the district court was required to apply. *Jones v. Sussex I State Prison*, 591 F.3d 707, 712 (4th Cir. 2010). Because this appeal concerns a petition for relief under Section 2254, our review of the state court's decision is constrained by the "highly deferential" standard set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28

10

U.S.C § 2254(d). *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015). In particular, under AEDPA, federal courts may not grant habeas relief in a Section 2254 action unless the underlying state-court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

With respect to Section 2254(d)(1), "[a] state court's decision is 'contrary to' clearly established federal law only if it is 'substantially different' from the relevant Supreme Court precedent; it is 'an unreasonable application of' clearly established federal law only if it is 'objectively unreasonable.'" *Wolfe v. Johnson*, 565 F.3d 140, 159 (4th Cir. 2009) (quoting *Williams (Terry) v. Taylor*, 529 U.S. 362, 405, 409 (2000)). Additionally, the Supreme Court has explained that the term "unreasonable" as used in Section 2254(d)(1) means something more than merely "incorrect." *Williams (Terry)*, 529 U.S. at 410. As to Section 2254(d)(2), the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). In other words, to obtain habeas corpus relief in federal court under either section, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error

11

well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

We review Petitioner's ineffective-assistance claim based on the standard articulated in *Strickland*. The Sixth Amendment of the United States Constitution guarantees "the right to the effective assistance of counsel." *Strickland*, 466 U.S. at 686. A claim of constitutionally ineffective assistance has two components. "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. If a defendant fails to satisfy either component, such failure ends our analysis. *Id.*

"The first prong—constitutional deficiency—is necessarily linked to the practice and expectations of the legal community." *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010). Accordingly, Petitioner must demonstrate that his counsel's representation "fell below an objective standard of reasonableness," judged in light of "prevailing professional norms." *Strickland*, 466 U.S. at 688. Put differently, "[t]his requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

Even if Petitioner proves deficient performance, he must still show "prejudice"— that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In making this showing, Petitioner need not demonstrate that his counsel's unprofessional errors more likely than not altered the outcome of the case. *Id.* at 693. However, it is

12

also "not enough for the defendant to show that the errors had some *conceivable* effect on the outcome of the proceeding." *Id* (emphasis added). Instead, trial counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Our *Strickland* analysis—a deferential analysis in its own right—must be viewed through the deferential lens of Section 2254(d). Accordingly, when we review a state court's decision on a claim of ineffective assistance, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. As the Supreme Court explained, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* at 105. This is because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, . . . and when the two apply in tandem, review is doubly so." *Id.* (internal citations and quotation marks omitted). In other words, when we evaluate a claim of ineffective assistance within the strictures of Section 2254, we must "give[] both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). Consequently, so long as "fairminded jurists could disagree on the correctness of the state court's decision," a petitioner is not entitled to federal habeas relief. *Harrington*, 562 U.S. at 101 (internal quotation mark omitted).

Guided by these legal principles, we turn to the case before us.

A.

As a threshold matter, the State argues that Petitioner's appeal should be dismissed because the district court erred in granting him a certificate of appealability. Specifically,

13

the State argues that Petitioner failed to make a "substantial showing of the denial of a constitutional right"—a prerequisite to the issuance of the certificate. *See* 28 U.S.C. § 2253(c)(2). Thus, the State maintains, the district court never should have issued the certificate, and we should correct its error by rescinding the certificate and dismissing Petitioner's appeal. In response, Petitioner argues that the State waived its right to challenge the issuance of the certificate by failing to file a cross-appeal. We agree with Petitioner.

"An appellee who does not take a cross-appeal may 'urge in support of a decree any matter appearing before the record, although his argument may involve an attack upon the *reasoning* of the lower court.'" *Jennings v. Stephens*, 135 S. Ct. 793, 798 (2015) (quoting *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924)). "But an appellee who does not cross-appeal may not 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary.'" *Id.* (quoting *Am. Ry.*, 265 U.S. at 435). Put differently, in determining whether a cross-appeal is necessary to advance an argument on appeal, the dispositive inquiry is whether an appellee who has not filed a cross-appeal is trying to *enlarge* its own rights or *lessen* the appellant's rights. If the appellee wishes to do either, then the appellee is required to cross-appeal the district court's judgment. If not—that is, if the appellee is simply attacking (or supporting) the lower court's reasoning—then no cross-appeal is required.

This requirement is well-settled. *See, e.g.*, *id.* at 798–99 (holding that prisoner was not required to cross-appeal or seek certificate of appealability when the state appealed district court's grant of habeas corpus to prisoner on one ground—allowing for

14

his release or re-sentencing—and prisoner sought affirmance on alternative ground that would have resulted in identical relief); *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 479–80 (1999); *United States v. Burch*, 781 F.3d 342, 344 (6th Cir. 2015) ("As the government's goal is to restrict Burch's right to appeal and not to 'support' the rest of the district court's judgment . . . the government should have appealed the district court's order beforehand." (citing *Jennings*, 135 S. Ct. at 798)); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 697 (7th Cir. 2015) (concluding that defendant-appellee's alternative argument that plaintiff-appellant failed to state a claim under Fed. R. Civ. P. 12(b)(6) required cross-appeal when district court dismissed plaintiff-appellant's claim *without* prejudice for lack of Article III standing); *Thurston v. United States*, 810 F.2d 438, 447 (4th Cir. 1987) (rejecting government's argument that the district court erred in awarding $200 in attorney fees to plaintiff where government raised argument in its response brief but failed to file cross-appeal).

In this case, the district court denied Petitioner relief under Section 2254 but nonetheless issued him a certificate of appealability. Absent such a certificate, "an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1)(A). Thus, the issued certificate granted Petitioner the right to appeal the district court's decision. The State, without cross-appealing the district court's judgment, now urges us to rescind Petitioner's certificate. In other words, the State seeks to *lessen* (or deprive altogether) Petitioner's right to appeal. For us to consider its argument on this point, the State was required to file a cross-appeal or some

15

other form of timely objection. The State failed to do so. Therefore, we proceed to the merits of Petitioner's claim.[3]

## B.

We first address whether Petitioner's trial counsel performed deficiently under *Strickland*. The state PCR court thought so, concluding that, "under the circumstances of this case, . . . trial counsel's failure to object to Petitioner's legally inconsistent verdicts, on account of her admitted ignorance of the law, constituted a deficient performance." J.A. 181. But the district court disagreed. In particular, the district court stated that while trial counsel's failure to object to the presence of legally inconsistent verdicts is a "viable basis for some relief" under Maryland law, it "is not a federal, constitutional error." *Id.* at 260. From this observation, the district court concluded that "failure by . . . counsel to raise an objection based on state law does not constitute performance that [is] deficient

---

[3] During oral argument, the State for the first time contended that 28 U.S.C. § 2253(c)(2) was a "jurisdictional" requirement, requiring this Court to independently determine that the district court properly issued the certificate of appealability. *See* Oral Argument at 13:15–14:50. Not so. As the Supreme Court has explained,

> Section 2253(c)(2) speaks only to *when* a [certificate of appealability] may issue—upon 'a substantial showing of the denial of a constitutional right.' It does not contain § 2253(c)(1)'s jurisdictional terms. . . . And it would be passing strange if, after a [certificate of appealability] has issued, each court of appeals adjudicating an appeal were dutybound to revisit the threshold showing and gauge its 'substantial[ity]' to verify its jurisdiction. That inquiry would be largely duplicative of the merits question before the court.

*Gonzalez v. Thaler*, 565 U.S. 134, 143 (2012) (internal citation omitted). Of course, that Section 2253(c)(2) is "nonjurisdictional does not mean that it is not mandatory or that a timely objection can be ignored." *See id.* at 146. But it does mean that the State must raise a "*timely* objection" to the issuance of the certificate. *Id.* (emphasis added).

16

for purposes of federal habeas relief." *Id.* at 260–61. We disagree with the district court's analysis.

First, although it is true that Petitioner's legally inconsistent verdicts were objectionable under *state* law only, *see United States v. Powell*, 469 U.S. 57, 64–65 (1984), whether counsel's failure to object resulted in deficient performance is, of course, a question of *federal* constitutional law, *see Strickland*, 466 U.S. at 687. Put differently, "the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension." *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984), *superseded by statute on other grounds*, Insanity Defense Reform Act of 1984, 18 U.S.C. § 17; *see also Fagan v. Washington*, 942 F.2d 1155, 1158 (7th Cir. 1991) (Posner, J.) ("[T]he constitutional right to counsel, and its derivative right that counsel be at least minimally effective, is unrelated to the source—whether state or federal—of the defendant's defenses."); *cf. Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (concluding that federal habeas relief is not available for errors violating California law, but *is* available for errors that violate "federal constitutional rights"). Here, Petitioner's claim is predicated on an alleged violation of his Sixth Amendment right to effective counsel. Therefore, it is cognizable under Section 2254(d).

Additionally, much of the district court's independent review of trial counsel's performance rests on erroneous reasoning. To begin, the district court incorrectly conflated *Strickland*'s deficient performance and prejudice components. In particular, in reviewing whether Petitioner established deficient performance, the district court relied in part on language found in *Strickland*, stating that "[a]n error by counsel even if

17

professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." J.A. 256 (quoting *Strickland*, 466 U.S. at 691)). But this language goes toward the *prejudice* component of *Strickland*— namely, whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. It does not determine whether trial counsel's performance "fell below an objective standard of reasonableness," judged against "prevailing professional norms," *id.* at 688— the cornerstone inquiry of deficient performance.

The district court's conclusion also runs counter to the myriad controlling opinions standing for the proposition that acts or omissions made by counsel under a mistaken belief or an ignorance of law are rarely—if ever—"reasonable" in light of prevailing professional norms. *See, e.g.*, *Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014) (per curiam) ("The trial attorney's failure to request additional funding in order to replace an expert . . . because he mistakenly believed that he had received all he could get under Alabama law constituted deficient performance."); *Williams (Terry)*, 529 U.S. at 395–96 (finding deficient performance when capital attorneys "failed to conduct an investigation that would have uncovered extensive [mitigation evidence], not because of any strategic calculation but because they incorrectly thought that state law barred access to such records"); *Kimmelman v. Morrison*, 477 U.S. 365, 385–87 (1986) (finding deficient performance when "[c]ounsel's failure to request discovery . . . was not based on 'strategy,' but on counsel's mistaken beliefs that the State was obliged to take the initiative and turn over all of its inculpatory evidence to the defense and that the victim's

18

preferences would determine whether the State proceeded to trial after an indictment had been returned"); *see also United States v. Carthorne*, 878 F.3d 458, 467 (4th Cir. 2017) ("Of course, counsel may have a strategic reason for not raising a particular objection but, in the absence of such a reason, the failure to raise an objection that would be apparent from a thorough investigation is a significant factor in evaluating counsel's performance."); *Gray v. Branker*, 529 F.3d 220, 232 (4th Cir. 2008) (finding deficient performance when "there [was] no indication that [trial counsel] understood that expert mental health evidence could be critical to the jury's decision on sentencing" and "failure to investigate in this area was unreasonable under prevailing professional norms"); *Vinson v. True*, 436 F.3d 412, 419 (4th Cir. 2006) ("On habeas review, a federal court generally credits plausible strategic judgments in the trial of a state case. . . . Of course, we would not regard as tactical a decision by counsel if it made no sense or was unreasonable under prevailing professional norms." (internal citation and quotation marks omitted)); *Thomas-Bey v. Nuth*, 67 F.3d 296 (4th Cir. 1995) (unpublished after argument) (per curiam) (finding trial counsel performed deficiently when counsel's consent to a post-trial, pre-sentencing interview of defendant by a prosecution-employed psychiatrist was not based on trial strategy but rather "complete ignorance" of the fact that the psychiatrist was employed as an expert for the prosecution).

The district court also erred in accepting the State's argument that Petitioner's trial counsel may have made a deliberate strategic choice to refrain from objecting to the legally inconsistent verdicts, as an objection could have resulted in the jury redeliberating and ultimately convicting Petitioner of an additional felony—namely, attempted armed

19

robbery. By not objecting, the State continues, trial counsel's "inaction actually *saved* Petitioner from an additional felony conviction." Appellee's Br. at 32 (emphasis added). We disagree.

To begin, the district court's conclusion that trial counsel's decision not to object reflected a strategic choice runs contrary to her unrebutted testimony—credited by the state PCR court—that had she been aware of the precedent rendering the legal inconsistent verdicts unlawful *she would have objected.* Consequently, the testimony of Petitioner's trial counsel expressly contradicts the State's postulate that her failure to object reflected a trial strategy. Because she was unaware that legally inconsistent verdicts violated Maryland law, Petitioner's trial counsel was "not in a position to make an informed strategic choice" about whether to object to the jury's verdicts. *Gray*, 529 F.3d at 231 (internal brackets omitted).

Additionally, the State's trial strategy argument ignores the fact that—even in the worst-case scenario—had the jury redeliberated and thereafter convicted Petitioner of an attempted armed robbery count, that count simply would have "merged" into the armed robbery count. *See Nicolas v. State*, 44 A.3d 396, 405–406 (Md. 2012); *McGrath v. State*, 736 A.2d 1067, 1068–69 (Md. 1999).[4] In other words, because the jury had already found him guilty of armed robbery and first-degree felony murder, Petitioner

---

[4] An illustration of merger is present in this case. Because Petitioner's conviction for first-degree felony murder was predicated on his conviction for armed robbery, his armed robbery conviction "merged" with the felony murder conviction, and he was punished for the latter only. *See* J.A. 4–5.

faced no additional consequences resulting from a conviction for attempted armed robbery. Thus, there was no downside to trial counsel raising a timely objection to the legally inconsistent verdicts.

By contrast, as Petitioner correctly argues, there was "tremendous upside" to a timely objection. Appellant's Br. at 26. Had that occurred, the jury would have re-deliberated and may have returned a new verdict acquitting Petitioner of armed robbery and felony murder. By failing to object—based on ignorance, not strategy—Petitioner's trial counsel unreasonably deprived him of the opportunity to have the jury deliberate further on whether he was, in fact, guilty of robbery (and by extension, felony murder). Accordingly, we agree with the state PCR court's conclusion that, under the circumstances of this case, Petitioner's trial counsel performed deficiently when she failed to object to the legally inconsistent verdicts.

C.

Having agreed with the state PCR court's finding of deficient performance, we next consider whether the state PCR court unreasonably applied *Strickland* in concluding that Petitioner failed to show prejudice as a result of his counsel's deficient performance.

In denying Petitioner post-conviction relief, the state PCR court concluded that it was "convinced beyond a reasonable doubt that, had an objection been made, the jury would have simply been instructed on the range of permissible verdicts, and would then have returned a guilty verdict on attempt in addition to the guilty verdicts for armed robbery and felony murder." J.A. 183–84. Petitioner argues that the state PCR court engaged in "pure speculation" when it reached this conclusion. Appellant's Br. at 26–28.

21

We disagree. In concluding that Petitioner failed to show prejudice, the state PCR court relied on the evidence presented against Petitioner at trial, as well as the verdicts returned by the jury. This determination did not amount to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d), as the Supreme Court has construed that provision.

For one thing, as the state PCR court observed, the jury simply was not instructed that a conviction for armed robbery necessarily entails a conviction for attempted armed robbery; nor was the jury instructed that its verdicts must be legally consistent. Additionally, the state PCR court reasonably relied on the fact that the jury returned a guilty verdict against Petitioner on the armed robbery count *in addition to* a guilty verdict on the felony murder count. The trial court's felony murder instruction made clear that the jury first must find Petitioner guilty of a predicate felony—namely, attempted armed robbery or armed robbery—to return a guilty verdict against him on the first-degree felony murder count:

> [I]n order to find the Defendant guilty of first degree felony murder, you would have to find that he *committed or attempted to commit* the felony of robbery, that he did, in fact, kill the victim, and that the act resulting in the death of the victim occurred during *the commission or attempted commission* of a felony.

Transcript of Proceedings, ECF No. 39-2, at 4:3–9 (emphases added). Thus, it was not unreasonable for the state PCR court to conclude that the jury clearly expressed its belief that Petitioner was guilty of armed robbery when it returned guilty verdicts on both the armed robbery *and* felony murder counts.

22

Had the jury returned two verdicts only—one convicting Petitioner of armed robbery and another acquitting him of attempted armed robbery—Petitioner's claim may have been stronger. But the jury convicted Petitioner of armed robbery *and* felony murder, with the latter crime requiring a preliminary finding that Petitioner was guilty of either attempting or committing armed robbery. This additional conviction supports the finding that the jury did, in fact, determine that Petitioner was guilty of committing armed robbery. Based on these particular circumstances, we do not find unreasonable the state PCR court's conclusion that Petitioner failed to show a reasonable probability that, but for his trial counsel's failure to object to the legally inconsistent verdicts, the result of his trial would have been different. *See Strickland*, 466 U.S. at 694–96. Accordingly, the state PCR court reasonably applied *Strickland* in denying Petitioner relief.

III.

For reasons stated above, the judgment of the district court is

*AFFIRMED.*

23